**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN GOCI,

Plaintiff,

v.

CITY OF DETROIT,

Defendant.
_________________________________/

Case No. 26-14043

HON. DENISE PAGE HOOD

# ORDER GRANTING PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION

The matter is before the Court on Plaintiff John Goci's request for a preliminary injunction. (ECF No. 4.) Defendant City of Detroit opposes the request. (ECF No. 7.) The Court heard oral argument on the matter on October 29, 2026. For the reasons set forth below, Plaintiff's request is GRANTED.

## I. BACKGROUND

According to Plaintiff's verified complaint, Plaintiff is a write-in candidate for the MI-13 Congressional Race. (ECF No. 1, PageID.4.) Plaintiff began campaigning before the primary in the Spring of 2026. As a part of that campaign, he created political signs that could be placed in yards or in front of businesses owned by his friends and supporters. In the beginning of July, Plaintiff put up about forty of his campaign signs in front of businesses in downtown Detroit, along 8 Mile

Road and Gratiot Avenue with the permission and support of the business owners. *Id.* at PageID.5. A few days after placing his signs, in July 2026, Plaintiff received an email from the City of Detroit stating that his signs violated the Detroit City Code Chapter 4. *Id.* at PageID.7. The email included an attached flyer entitled "Campaign & Advertising Yard Signs" that indicated that "Campaign signs . . . are not allowed on commercial property without a permit." *Id.*; *see also* ECF No. 1-1. The flyer stated that campaign signs are permissible only during the period 30 days prior to and seven days after the date of any federal, state, or local primary election and warned that the first offense of posting a political campaign sign outside this window and without a permit is $600, the second offense is $1,200, and each additional offense is $3,000.

Plaintiff states that fearing repercussions and fines, he took down his signs after receiving the email. (ECF No. 1, PageID.8.) He then researched and discovered the high cost and time involved in obtaining a permit. *Id.* at PageID.9. For example, he was quoted $300 by one sign erector to fill out a permit application for a single sign. Plaintiff states that he does not have the money for forty sign permits or the time to wait for each application to be approved. *Id.* at PageID.13.

The ordinance at issue requires property owners to obtain a permit to erect a sign. The definition of "sign" is "any structure containing a visual display, or painted

or projected image, that is oriented toward and visible from any public or private right-of-way or public property and that is intended to announce, identify, inform, or direct attention." (ECF No. 1-4, PageID.41.) "Portable sign" is defined as "a sign that is designed to be moved easily and that rests upon, but is not permanently affixed to, the ground." (*Id.*) "Temporary sign means a type of business sign that is intended to be displayed for a limited period of time." (*Id.* at PageID.42.) There is a list of signs that are exempt from the ordinance's requirements, which includes "public service announcements promoting the protection of the public peace, health, safety, and welfare," "displays of the flags, emblems, or official signia of a national, state, or local political unity or any of its departments or agencies," "art murals," and "heritage signs." Political campaign signs are defined as temporary advertising signs. Such signs may be placed in residentially zoned areas without a permit.

Plaintiff's verified complaint, filed on October 22, 2026, includes two counts under the First Amendment of the United States Constitution and 42 U.S.C. § 1983. In Count I, Plaintiff alleges that the City's requirement that business owners obtain a permit to post political signs is unconstitutional on its face and as applied to him. *Id.* at PageID.15. In Count II, Plaintiff alleges that the City's ordinance creates an unconstitutional prior restraint on protected political speech. *Id.* at PageID.18. Plaintiff seeks a judgment declaring that Defendant violated his First Amendment

right to free speech. *Id.* at PageID.19. He also requests "a temporary, preliminary, and permanent injunction enjoining Defendant . . . from preventing Plaintiff from posting his signs without a permit before the November 2026 Election and all future elections." *Id.* The Court denied Plaintiff's motion for a temporary restraining order, which was filed on October 26, 2026, but allowed Defendant to respond to the request for a preliminary injunction. (ECF No. 5.)

## II. ANALYSIS

"Issuance of a preliminary injunction is an extraordinary remedy." *JGMM Realty, L.L.C. v. LNR Partners, L.L.C.*, No. 16-10633, 2016 U.S. Dist. LEXIS 56466, at *2 (E.D. Mich. April 28, 2016). "A plaintiff seeking a preliminary injunction must establish (1) that []he has a strong likelihood to succeed on the merits; (2) that []he is likely to suffer irreparable harm without the injunction; (3) that the injunction would not cause substantial harm to others; and (4) that an injunction is in the public interest." *Id.* at *2 (*quoting Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.LC.*, 717 F. Supp. 2d 724, 731 (E.D. Mich. 2010)).

Defendant argues that Plaintiff's request for a preliminary injunction is barred by the equitable doctrine of laches. Defendant also argues that Plaintiff has failed to establish entitlement to the extraordinary relief he seeks.

### A. Laches

Laches is the "negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quotation marks and citation omitted). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id.*

Plaintiff states that he researched the process of obtaining a permit for his signs but found the costs associated with doing so too high. Plaintiff admittedly did not try to obtain a waiver of the permit requirement or inquire about whether the fees could be waived. And even though Plaintiff received the email from Defendant on July 13, 2026, he did not file this case until October 22, 2026—only days before the election. This shows a lack of diligence on the part of Plaintiff. Notwithstanding, the Court does not find application of the doctrine of laches appropriate here.

Defendant points to the expedited briefing schedule to argue that Plaintiff's lack of diligence has been prejudicial, but courts have found this insufficient on its own to impose laches. *See, e.g.*, *Smith v. Husted*, No. 2:16-cv-212, 2016 U.S. Dist. LEXIS 194805, at *9 (S.D. Ohio March 11, 2016). And in most cases where courts have applied laches in election cases, an injunction would have required the addition of issues or parties to the ballot. *See id.* at *10-11 (citing cases). Here, Plaintiff

merely seeks to bar enforcement of the permit requirement for his campaign signs on commercial property. The Court therefore declines to find that Plaintiff's request is barred by laches and will consider it on the merits.

**B. Likelihood of Success on the Merits**

Courts examining an ordinance under the First Amendment must first determine whether the ordinance is content-based or content-neutral. A content-based regulation, which restricts speech because of the ideas or messages expressed, is presumptively unconstitutional and subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). In such cases, the government must demonstrate that the restriction is narrowly tailored to promote a compelling state interest. *See id.* If the speech is content-neutral, the government need only show that it has a significant interest at stake, that the regulation is narrowly tailored to promote that interest, and that there are ample alternative means available to communicate the desired speech. *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 596 U.S. 61, 76 (2022).

Plaintiff's position is that the ordinance is unconstitutional under either standard. Defendant argues that the ordinance is content-neutral and a reasonable time, place, and manner restriction.

In *City of Austin*, the Supreme Court rejected "the view that *any* examination

of speech or expression inherently triggers heightened First Amendment concern. Rather, it is regulations that discriminate based on the topic discussed or the idea or message expressed that are content based." *Id.* at 73 (quotation marks and citation omitted). There, the Court found that a prohibition on the construction of "off-premises signs"—those advertising goods or services not sold or provided at the same location as the sign—content-neutral. *Id.* at 76.

At first glance, the ordinance at issue here may appear to be content-neutral. "Sign" is defined broadly and does not require any content-based determination. The problem, however, is the list of exemptions. Signs exempt from the ordinance's requirements include public service announcements, art murals, and heritage signs. In a recent case, the Sixth Circuit considered an ordinance that imposed a permissible, content-neutral regulation similar to the one in *City of Austin* but included exemptions for signs posted by a public authority and public service signs. *Norton Outdoor Adver., Inc. v. Village of St. Bernard*, 99 F.4th 840, 848-49 (6th Cir. 2024). The court reasoned that while the first exception did not call for application of strict scrutiny because government speech is not subject to the Free Speech clause, the second exception "elevate[d] certain speech over other speech" and made the ordinance a content-based regulation subject to strict scrutiny. *Id.* at 850-51. Because the ordinance at issue here similarly exempts public service announcements, under

*Norton*, it is content based and strict scrutiny applies.

The government interest at stake here—minimizing visual clutter—has been recognized as a valid interest but not a compelling interest. *See City of Ladue v. Gilleo*, 512 U.S. 43, 54 (1994). And the ordinance is not narrowly tailored to promote this interest. In *Norton*, the court explicitly noted that "[a]s a matter of aesthetics, public-service signs . . . create the same problem as other outdoor advertising signs" and found that the municipality had therefore failed to narrowly tailor its regulations to accomplish this interest. *Norton*, 99 F.4th at 851-52. The ordinance does not withstand strict scrutiny, and Plaintiff is likely to succeed on the merits of his First Amendment claim.

Defendant notes that in *Norton*, the Sixth Circuit ultimately remanded the case to the lower court to consider whether the ordinance may be saved by severing the service-sign exemption. *See id.* at 852. But the issue of severability goes to the remedy and not the merits of Plaintiff's First Amendment claim. The Court need not reach the issue of severability at this juncture of the case.

**C. Remaining Factors**

Because Plaintiff is likely to succeed on the merits of his First Amendment claim, he has also established the possibility of irreparable harm. *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (noting that "it is well-settled

that loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (quotation marks and citation omitted). Moreover, an injunction will not cause substantial harm to others, and the public interest will be served by protecting a First Amendment right. Because the balance of factors weighs in favor of Plaintiff, a preliminary injunction is appropriate.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's request for a preliminary injunction is **GRANTED.**

IT IS FURTHER ORDERED that Defendant is **ENJOINED** from preventing Plaintiff from posting his portable temporary campaign signs without a permit on his own property or the property of his supporters with their express permission before the November 2026 election only, pending adjudication on the merits. Such display of portable temporary signs must be otherwise in compliance with Defendant City of Detroit's ordinance, rules, and regulations.

SO ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: October 31, 2026